[No. D006725. Fourth Dist., Div. One. Jan. 13, 1988.]

SAN DIEGO UNIFIED PORT DISTRICT, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
MARRIOTT CORPORATION et al., Real Parties in Interest.

COUNSEL

Butz & Lucas and Douglas M. Butz for Petitioner.

No appearance for Respondent.

Hubka & Hubka, Verne R. Hubka, McCormick & Mitchell and Ralph J. Moreno for Real Parties in Interest.

**OPINION**

**WIENER, Acting P. J.**—The San Diego Unified Port District (District) seeks a writ of mandate after the Superior Court of San Diego County overruled its demurrer to Marriott Corporation's (Marriott) complaint attempting to intervene in the personal injury action below brought by plaintiff Joyce Campbell against the District. We issued an alternative writ to determine whether Marriott, the workers' compensation insurance carrier for Campbell's employer, may use the claim filed by Campbell to satisfy its filing requirement under the government claims statutes. (Gov. Code,[1] §§ 911.2, 945.4.) We conclude Campbell's filing satisfies the filing requirement for Marriott. Accordingly, we deny the writ.

### FACTUAL AND PROCEDURAL BACKGROUND

A large rat attacked and bit Campbell while she was working at the Marriott Host Cafeteria located in the West Terminal of the San Diego Airport. Campbell fell and hit her head. She is now paralyzed on her entire left side. Marriott was the workers' compensation insurance carrier for Campbell's employer at the time of the accident. As of January 1987 Marriott paid Campbell almost $118,000 in workers' compensation benefits.

The District, a public entity, owns the San Diego Airport. Campbell filed a timely claim against the District pursuant to the Government Tort Claims

---

[1] All statutory references are to the Government Code unless otherwise specified.

Act (Act). (§ 900 et seq.) The District rejected the claim and Campbell timely filed suit. Marriott, without having filed a separate claim against the District, attempted to intervene in Campbell's suit to recover compensation benefits.

The District successfully demurred to Marriott's complaint on the ground Marriott had failed to allege compliance with the filing requirements for claims against public entities set forth in sections 911.2 and 945.4 et seq. Marriott filed a first amended complaint alleging Campbell's uncontested compliance with the claims requirements. The amended complaint further alleged Campbell's compliance with the filing requirements excused Marriott "from the public entity claim requirements." The District unsuccessfully demurred on the ground Marriott failed to allege compliance with the claims filing requirements. This proceeding ensued.

## DISCUSSION

### I

▇▇▇▇ The question in this case is whether Campbell's compliance with the Act's written claim requirements satisfied Marriott's filing requirement. We believe the answer to this question turns on the purposes served by the Act and the relevant provisions of the Labor Code which permit redress to employers who have paid workers' compensation benefits (Lab. Code, § 3850 et seq.). Any result we reach should maximize, to the extent possible, the purpose of both statutory schemes.

When an employee is injured by a third party's tortious act, an employer is indirectly injured to the extent the employer must pay out workers' compensation benefits. By statute the employer may recoup its damages from the third party through subrogation. (*Ibid.*) By definition a workers' compensation insurance carrier who has paid benefits has all the rights of an employer.[2] (Lab. Code, § 3850.)

The carrier can recover its damages by (1) suing the third party in its own name (Lab. Code, § 3852), (2) intervening in an action filed by the employee (Lab. Code, § 3853), or (3) filing a lien claim in a suit filed by the employee (Lab. Code, § 3856, subd. (b)). Should the employee and carrier file independent suits, the suits must be consolidated under Labor Code section 3853.

---

[2] For convenience sake we refer to the employer and the workers' compensation insurance carrier collectively as "the carrier."

The statutory scheme serves two purposes. It insures that the carrier and employee recover just compensation for the damages each suffered from the party ultimately responsible for the employee's injury. It further insures that the tortfeasor is confronted with only one action in which a totality of the claims against him can be determined. (See *County of San Diego* v. *Sanfax Corp.* (1977) 19 Cal.3d 862, 872-873 [140 Cal.Rptr. 638, 568 P.2d 363].)

The Act provides a statutory scheme for the presentation and determination of tort claims against public entities. Section 911.2 requires a party with a cause of action for personal injuries to file a written claim with the entity within 100 days after the accrual of the cause of action. Unless a written claim is filed, a party cannot sue a public entity. (§ 954.4.)

■ There are two purposes for the filing requirement: (1) to give notice to the public entity so it will have a timely opportunity to investigate the claim and determine the facts; and (2) to give the public entity an opportunity to settle meritorious claims thereby avoiding unnecessary lawsuits. (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 455 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223]; *Lacy* v. *City of Monrovia* (1974) 44 Cal.App.3d 152, 155 [118 Cal.Rptr. 277].) By requiring advance knowledge of potential claims, the claims statute provides an opportunity to the public entity to quickly rectify a dangerous condition and further provides an opportunity for the entity to take the potential claim into account in its fiscal planning. (*Roberts* v. *State of California* (1974) 39 Cal.App.3d 844, 848 [114 Cal.Rptr. 518].)

■ Marriott's point is simple. The purposes of the claims filing statute were met by Campbell's claim since Marriott's claim is completely encompassed therein. ■ Labor Code section 3852 provides that a carrier can recover for compensation and damages it paid or is obligated to pay the employee. The carrier may not recover any damages in excess of those recoverable by the employee. (*Breese* v. *Price* (1981) 29 Cal.3d 923, 928 [176 Cal.Rptr. 791, 633 P.2d 987].) "Substantively, as well as procedurally, employer and employee actions are interchangeable: regardless of who brings an action, it is essentially the same lawsuit." (*County of San Diego* v. *Sanfax Corp., supra,* 19 Cal.3d at p. 874.)

■ Campbell's claim sets forth that she was employed by Marriott Host Cafeteria, that she was attacked and bitten by a rat at the cafeteria, and that as a result she fell, hit her head, and was paralyzed on her entire left side. She sought damages of $5 million including loss of income. Thus, Campbell's claim gave the District a timely opportunity to investigate the

claim and determine the facts. The claim advised the District of the dangerous condition and gave it an opportunity to take whatever action was necessary to rectify the problem. The claim also stated the nature of the injuries and the total amount of the claim thereby allowing orderly fiscal planning.

The District's decision not to settle with Campbell was not affected by Marriott's failure to file a claim. The fact that a workers' compensation carrier might be entitled to reimbursement of the benefits it paid does not affect the merits of the claim made by the injured party.

It is also clear that the District was not, and could not, be prejudiced by Marriott's failure to file a claim. As we have explained since Campbell's claim for damages was all-inclusive, a separate claim by Marriott was unnecessary to implement the purpose of the Act. In the circumstances of this case requiring Marriott to file a written claim would interfere with the purpose of the legislative scheme which was created to allow carriers to seek reimbursement for compensation benefits previously paid.

The District nonmeritoriously argues Marriott's intervention creates a greater potential for liability because in the future Campbell may abandon or dismiss her lawsuit. In effect, the District wants us to equate its increased exposure with its fortuitous good fortune when the injured party decides to abandon his or her lawsuit. Marriott ignores the fact that when the carrier pursues its claim, the District's liability exposure has not been increased. The exposure was there when the claimant, here Campbell, initially filed her claim. Once there has been compliance with the statute by the filing of an all-encompassing claim, the District cannot complain about the possibility that it will have to pay all sums which arise therefrom.

At oral argument the District's attorney explained the District's objection to Marriott's intervention was that it gave Marriott the right to participate in the trial against the District. In other words, if the case is tried the District wants to avoid facing two opposing lawyers in the court room. While we can appreciate the importance of this tactical concern there is nothing in the claims statutes that gives support to the District's position. The Act was in no way intended to prevent the diligent and effective pursuit of a claim once the governmental entity has been given notice of that claim.

II

In asserting that compliance by the carrier is essential in those cases where the injured employee has complied with the Act's written claim

requirement, the District also ignores the settlement process in which many if not most of these cases are resolved.

In cases where a carrier has not filed a written claim, the carrier nonetheless can obtain a valid lien to secure payment of the benefits paid to the injured employee under Labor Code section 3856, subdivision (b). There is nothing in the Government Code which conditions the validity of this lien on the filing of a written claim. And when the case is settled, the claimant must relinquish part of the settlement proceeds to satisfy the lien. (Lab. Code, § 3860, subd. (b).) In this scenario the need for the carrier to have filed a written claim under the Act simply does not arise.[3]

The Legislature also decided the interest of the carrier was of sufficient importance that it not only authorized a lien to secure payment, but required notice to the carrier before any settlement between the claimant and the third party could be effected. (Lab. Code, § 3860, subd. (a).) As a practical matter, as most settlement judges are well aware, the proffered settlement is frequently inadequate to fully satisfy the demands of the claimant and the carrier. Settlement in these cases is sometimes reached by the parties compromising their respective demands and taking a smaller piece of the settlement pie. There are cases, however, in which the carrier concludes that a sliver of the settlement pie is simply inadequate. To resolve the impasse in such cases, settlement is frequently effected between the claimant and the third party by severing the respective interests of the carrier and the injured party permitting the carrier to litigate its claim against the third party in a separate action pursuant to Labor Code section 3852. (See Lab. Code, § 3859, subd. (b); *Van Nuis* v. *Los Angeles Soap Co.* (1973) 36 Cal.App.3d 222, 229 [111 Cal.Rptr. 398].)

There are benefits to this approach. The claim of the injured party with his or her substantially larger demand for damages has been fairly resolved with a minimum of litigation expense while the controverted issues between the carrier and the third party can still be resolved in a relatively simple lawsuit without the complexities of placing a value on damages for pain and suffering and economic loss. Moreover an accurate determination can be made of the employer's comparative negligence, if any, which should fairly reduce the carrier's portion of the recovery. (See *Associated Construction &*

---

[3] At oral argument counsel for the District conceded that except for its tactical concern noted above the carrier's lien accomplished the identical purpose as intervening in the action. Counsel also admitted no written claim was necessary in order to pursue the carrier's lien rights. In this regard, we wish to express our appreciation to all counsel for their candid answers to the court's questions at oral argument on the practical aspects of this type of litigation. Counsel's answers have given us additional insight as to the settlement process enabling us to weigh factors that are not apparent from the written record.

*Engineering Co.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 829, 842 [150 Cal.Rptr. 888, 587 P.2d 684] [discussing reduction of employers' recovery on the basis of comparative negligence principles].)

If we were to accept the District's argument and require the carrier to file a written claim when the injured employee had timely filed a written claim we would be upsetting the delicate balance involved in these settlement proceedings by adding a complicating wrinkle. If an employee settles his action excluding compensation benefits, under Labor Code section 3859, subdivision (b), the carrier would have the right to proceed against the third party under Labor Code section 3852 to recover those benefits. However, the carrier's right would be meaningless if the governmental entity could bar its action because of the carrier's failure to file a separate timely claim. The settlement process would be chilled if settlement could be effected only at the expense of squeezing out the legitimate interest of the carrier who had failed to file a written claim for no reason other than the carrier's reasonable belief that its interest would be protected in the lawsuit of the injured party. With fewer settlements effected, the larger and more complex plaintiffs' cases would then proceed to trial with emotional and financial burdens to the parties. We see no reason to reach this costly and unnecessary result when the purposes of the Act and the Labor Code are both served by treating the filing of the written claim by the injured party as sufficient to satisfy the written claim requirement of the carrier.

### III

The District asserts that in spite of the foregoing considerations the written claim filing requirement is nonetheless mandatory and the filing of a claim by one party, with respect to a prospective cause of action, cannot relieve another party from having to file an independent claim. The District refers us to *Petersen* v. *City of Vallejo* (1968) 259 Cal.App.2d 757 [66 Cal.Rptr. 776] and *Bozaich* v. *State of California* (1973) 32 Cal.App.3d 688 [108 Cal.Rptr. 392].

In *Petersen* a mother and a daughter sought to recover for the wrongful death of their husband and father. The daughter's claim was barred because she had failed to file a timely claim under the claims statute. The court held the daughter could not rely on a timely claim filed by her mother. The court's decision was based in large measure, on the fact each heir had a separate interest in the deceased's life and the total amount recoverable depended on the individual heir's separate interests. (*Petersen, supra,* 259 Cal.App.2d at pp. 765-767.)

*Bozaich* involved an inverse condemnation suit brought by multiple plaintiffs. The plaintiffs, mischaracterizing the suit as a class action, sought to have a claim filed by one of the parties cover all plaintiffs. Allowing the claim would have created chaos for state fiscal planning and subjected the state to suit by unascertainable numbers of claimants without any warning or opportunity to investigate. (*Bozaich, supra,* 32 Cal.App.3d at pp. 696-697.) Both cases involved prospective claimants with separate claims and additional damages. They are inapplicable here.

The District additionally relies on two cases where widows of deceased employees were barred from intervening in suits filed by the workers' compensation insurance carrier or the employer (collectively carrier). (*Roberts* v. *State of California, supra,* 39 Cal.App.3d 844; *Pacific Tel. & Tel. Co.* v. *County of Riverside* (1980) 106 Cal.App.3d 183 [165 Cal.Rptr. 29].) In *Roberts* and *Pacific Telephone* the carriers filed timely claims and brought suit after rejection of the claims. The widows had failed to file timely claims but later sought to join in the carriers' suits relying on the carriers' claims. The courts held the filing of the carriers' claims did not meet the filing requirements for the widows' wrongful death actions. (*Roberts, supra,* 39 Cal.App.3d at pp. 847-848; *Pacific Telephone, supra,* 106 Cal.App.3d at pp. 190-192.) Both courts examined the circumstances to determine whether the purposes of the claims filing statute had been met and barred intervention largely because the purposes had not been met by the filing of the carriers' claims.

In *Roberts* and *Pacific Telephone* the carriers' claims did not provide an opportunity for orderly fiscal planning because the extent of potential damages was unknown to the entity. (*Roberts, supra,* 39 Cal.App.3d at p. 848.) Nor were the entities given the information necessary to make an informed decision on settlement. Confronted with the complex litigation and high damages possible in a wrongful death suit, rather than liability to an employer under the Labor Code, the entities' posture on settlement may have been significantly different. (*Ibid.*)

The District relies on wording in *Pacific Telephone* to the effect that the right of joinder under Labor Code section 3853 is conditioned upon the timely filing of a separate claim by the intervening party. (*Pacific Telephone, supra,* 106 Cal.App.3d at pp. 193-194.) That is, the right of subrogation in Labor Code section 3853 is "subject to the claims filing requirement of the Government Code." (*Id.* at p. 194.) To the extent *Pacific Telephone* addresses subrogation rights it is dictum. The widow in *Pacific Telephone* had no subrogation rights. It is the employer or carrier subrogee who enjoys the right of subrogation.

We therefore conclude there is no reason to defeat the comprehensive and rational statutory scheme established by the Legislature to reimburse an employer or a carrier by requiring what would be in effect a duplicate written claim against the public entity. We believe that our decision not only furthers the purposes of the Labor Code's statutory scheme to reimburse carriers for compensation benefits paid, but is consistent with the nonfault nature of workers' compensation law. The overall purpose of workers' compensation law is to provide compensation to injured employees regardless of fault. Therefore, as explained to us at oral argument by the carrier's attorney, upon notification of a claim a carrier does not normally institute a full-scale investigation into the circumstances of the worker's injury. The carrier normally relies on the employee to pursue actions against third party tortfeasors. If the carrier is unable to rely on an employee's claim filed against a governmental entity, the carrier would be required to expeditiously investigate any accident to determine whether a public entity was involved. This would not only create a difficult administrative burden, but result in increased costs for the carrier which must ultimately be borne by the employer. Since the purposes of the claims statute are served by the filing of the employee's claim, we see no reason to impose this added burden on our workers' compensation system.

## DISPOSITION

The writ is denied. The parties to bear their respective costs for this proceeding.

Butler, J., and Benke, J., concurred.