UNITED STATES of America, Plaintiff,

v.

**Thomas C. HYNES, et al., Defendants.**

No. 88 C 3732.

United States District Court,
N.D. Illinois, E.D.

March 26, 1991.

---

Eileen M. Marutzky, Asst. U.S. Atty., Richard A. Correa, U.S. Dept. of Justice, Tax Div., Washington, D.C., for plaintiff.

Karen J. Dimond, Asst. State's Atty., Mark R. Davis, Special Asst. State's Atty., O'Keefe, Ashenden, Lyons & Ward, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

This case concerns an ongoing dispute between the United States of America and Cook County over the imposition of ad valorem property taxes by Cook County on two federal buildings being purchased by the General Services Administration on an installment basis pursuant to the Purchase Contract Program, 40 U.S.C. § 602a. Both parties have filed motions for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons stated below, plaintiff's motion for summary judgment is granted and defendants' motion for summary judgment is denied.

## FACTS

Many of the facts relevant to the disposition of this motion can be found in the Seventh Circuit's opinion in *United States v. County of Cook*, 725 F.2d 1128, 1129–30 (1984), and need not be repeated here. Two federal buildings located in Illinois— the Harold Washington Social Security Center and the Federal Archives and Records Center (the "Centers")—were purchased on an installment basis pursuant to the Purchase Contract Program, 40 U.S.C. § 602a. That section provides that

[w]ith respect to any interest in real property acquired under the provisions of this section, the same shall be subject to State and local taxes until title to the same shall pass to the Government of the United States.

*Id.* § 602a(d). However, prior to 1985, Illinois Revised Statutes ch. 120, ¶ 500.9a ("unamended ¶ 500.9a") excluded from local taxation certain government property. The statute exempted

[a]ll property that is being purchased by a governmental body under an installment contract pursuant to statutory authority and used exclusively for the public purposes of the governmental body.

In *County of Cook,* the Seventh Circuit held that the United States was a "governmental body" under ¶ 500.9a, and that the statute's exemption from local ad valorem taxation applies to Illinois realty being acquired by the United States under the Purchase Contract Program. 725 F.2d at 1131–32.

Effective January 1, 1985, ¶ 500.9a was amended ("amended ¶ 500.9a"). The statute now exempts

[a]ll property that is being purchased by a governmental body under an installment contract pursuant to statutory authority and used exclusively for the public purposes of the governmental body, *except such property as the governmental body has permitted or may permit to be taxed.*

(Emphasis added.) On the basis of the amended paragraph, defendants have assessed the Centers $15,259,389.76 for tax years 1985 through the first half of 1989. None of the tax bills have been paid. (Local Rule 12(*l*) and 12(m) statements.)

On April 29, 1988, the United States initiated this action seeking a declaratory judgment that defendants are prohibited from imposing ad valorem real property taxes on the Centers because such taxation discriminates against the United States in violation of the Supremacy Clause of the U.S. Constitution. The United States also seeks to enjoin defendants from assessing, imposing, or collecting such taxes on the Centers. Defendants filed a motion to dismiss, which this court construed as a motion for summary judgment. In a memorandum opinion and order of May 16, 1989, this court denied defendants' motion stating that "the legislative history of the 1984 amendment raises the issue of whether the Illinois legislature, through the facially neutral amendment to ¶ 500.9a, sought 'to impose a tax on properties being acquired by the United States but not on properties being acquired by state or local governments.' [*County of Cook,*] 725 F.2d at 1131." Defendants' motion for reconsideration was denied.

The United States has presently filed a motion for summary judgment on the grounds that the amendment to ¶ 500.9a discriminates against the United States in violation of the U.S. Constitution. Defendants have filed a cross-motion for summary judgment denying such discrimination and claiming that amended ¶ 500.9a conforms to the U.S. Constitution.

## ANALYSIS

■ At issue is whether amended ¶ 500.9a of chapter 120, Illinois Revised Statutes, imposes a discriminatory tax on the United States. A state regulation is invalid if it discriminates against the federal government or those with whom it deals. *North Dakota v. United States,* —— U.S. ——, 110 S.Ct. 1986, 1995, 109 L.Ed.2d 420 (1990). The question of whether a state regulation discriminates against the federal government cannot be viewed in isolation. *Id.* Rather the entire legislative system should be analyzed to determine whether it is discriminatory with regard to the economic burden that results. *Id.* The state does not discriminate against the federal government and those with whom it deals unless it treats someone else better than it treats them. *Id.* 110 S.Ct. at 1996.

■ Statutory provisions are most easily understood in light of their history. *Washington v. United States,* 460 U.S. 536, 103 S.Ct. 1344, 1346, 75 L.Ed.2d 264 (1983). The legislative history here reveals the clear intent of the Illinois legislature to "get at" the federal government and to

overcome its tax immunity. *See id.* 103 S.Ct. at 1352 (Blackmun, J., dissenting).

The amendment was specifically directed at property acquired by the United States and was a result of the *County of Cook* case. Illinois State Senator Timothy J. Degnan, one of the bill's sponsors, explained the purpose of the bill as follows:

> I would move to concur with House Amendment No. 3 which in effect becomes the bill and has to do with the assessment practices on U.S. Government property. Currently, U.S. Government property is both State and Federally tax exempt except when purchased or in the process of being purchased by a non-Federal source. While the U.S. Government will permit such property being purchased on an installment contract to be taxed, the State exempts such property from taxation. This provision lifts that exemption and solves a problem ... a particular problem that we have in Cook County.

Illinois Senate Transcript, June 28, 1984, pp. 19–20. Illinois State Representative Andrew J. McGann, another sponsor of the bill, explained the bill as follows:

> It's [sic] contents and purpose is to certify, as far as real property is concerned, with the Federal Government and the State Government as to their tax ability. That's all the Bill does. It comes from court decisions between the United States and Cook County, and it's a resolution now that we should be taxing some of the federal properties where the Federal Government states that we should be taxing such property. Therefore, we are looking into millions of dollars of revenue for localities as a result of this Bill, and I would move for its adoption.

83rd General Assembly of the State of Illinois, Transcription of Debate in the Illinois House of Representatives, June 13, 1984, p. C05.

Representative McGann continued:

> [W]e put Amendment # 3 on the Bill in order to bring out another more important or equally important, whatever way you look at it issue and that is the issue

in regards to the United States Government's liability for taxes in certain counties in the State of Illinois. And this came from a Federal Court decision which.... which they consent and state that they should be paying real estate taxes on certain properties. Therefore, we are going to have a little short windfall here for the residents of the State of Illinois inasmuch as we will be taxing some of these federal properties.

*Id.*, p. E05. Representative McGann later added:

> What it does ... the actual Bill does is that it clarifies some United States court decisions in regards to the taxing of government property, and it ultimately will bring in millions of dollars into the State of Illinois, where the United States Government accepts real estate taxes on the properties that they are using.

*Id.*, June 14, 1984, p. D11.

Defendants have shed no new light on the legislative history of the amendment to ¶ 500.9a since this court's decision of May 16, 1990 denying defendants' initial motion for summary judgment. Defendants concede that the amendment "shows a motivation among the legislators to obtain taxes which Congress provided for." (Def.Mem. in Support, p. 11.) However, assert defendants, the amended paragraph affects both federal and state installment purchase properties by initially exempting them from taxes, and then subjecting either to taxation if the government entity has consented to taxation of its respective properties. (*Id.* at 13–14.)

To look solely at the apparent neutrality on the face of the amendment would be to elevate form over substance, which must be avoided. *Washington*, 103 S.Ct. at 1350. The legislative history overwhelmingly reveals the intent of the Illinois legislature to reach into the coffers of the federal government, not the state government. Additionally, the effect of the amendment has been consistent with the intent harbored by the Illinois legislators: namely, to impose ad valorem taxes on property acquired by the federal government, and not on property acquired by state or local

governments. *See Maryland v. Louisiana,* 451 U.S. 725, 101 S.Ct. 2114, 2134, 68 L.Ed.2d 576 (1981) (a state tax must be assessed in light of its actual effect). While the methodology of GSA's survey was far from perfect, the survey did provide some evidence that no state or local property is being taxed subject to the exception to the exemption of ¶ 500.9a. Defendants are unable to point out any such properties. Thus, there exists the discriminatory intent of the Illinois legislature, and the fruition of such intent demonstrated by the dissimilar effect of the amended paragraph on federal and state properties.

■ Defendants argue that the amended provision affects the federal government differently than the state government only because the former has chosen to consent to taxation, while the latter has not. This argument fails. The discriminatory nature of the provision cannot be saved by the consent provided in § 602a. Instead, the state has discriminated against the federal government by treating themselves better than it treats the federal government. *See Washington,* 103 S.Ct. at 1350. At the time the provision was amended, the legislature was aware of the federal consent provided in 40 U.S.C. § 602a, and also was aware that the legislature had not used the power vested in it to consent to taxes in a similar manner.\* By taking advantage of this situation, the Illinois legislature was imposing a tax on property being acquired by the federal government under an installment contract but not on property similarly situated yet being acquired by the state. This is the type of discriminatory taxation that has been prohibited since *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 436, 4 L.Ed. 579 (1819).

Defendants argue that, should amended ¶ 500.9a be found discriminatory, there would be no way in which the Illinois legislature could properly take advantage of the Congressional waiver. (Def.Mem. in Support, p. 12 n. 6.) One option available to the Illinois legislature would be for the

legislature to pass legislation consenting to taxation in the same manner as the federal government did in 40 U.S.C. § 602a. A second option available to the Illinois legislature would be to make any exception to the government taxation exemption dependent upon future consent to taxation by a governmental body. By requiring consent to taxation after the passage of the legislation, the legislation would be treating equally all governmental property similarly situated. However, to take advantage of an already existing federal consent provision, while knowing that no similar state consent exists, the Illinois legislature clearly chose to tax real property purchased on an installment basis by the federal government but not real property purchased on an installment basis by the state government.

The absence of a "political check" on the passage of amended ¶ 500.9a by the legislature highlights the discriminatory nature of the provision. A "political check" is provided when a state tax falls on a significant group of state citizens who can be counted upon to use their votes to keep the state from raising the tax excessively, and thus placing an unfair burden on the federal government. *Washington,* 103 S.Ct. at 1350. It has been thought necessary because the United States does not have a direct voice in the state legislatures. *Id.* The Supreme Court has never upheld a state tax or regulation triggered solely by a federal transaction where the Court did not also find that the tax or regulation was part of a larger scheme that affected a politically significant number of citizens of the state. *North Dakota,* 110 S.Ct. at 2008–09 n. 8 (Brennan, J., dissenting).

Amended ¶ 500.9a does not provide a political check against abuses of the taxing power. The tax imposed on the federal government by the amendment does not fall upon the state or any citizens of the state. The complete lack of a political presence in the legislature by those who would

---

\* The Illinois legislature has the power to consent to taxation of state property. Article IX, Section 6 of the Illinois Constitution provides: "The General Assembly by law may exempt from taxation only the property of the State [and] units of local government...." Clearly, such authority also gives the legislature the power *not* to exempt such property from taxation.

actually bear the burden of the tax, and thus the absence of a "political check," is clear in Representative McGann's statement:

It's a good Amendment, ..., and I would appreciate an affirmative vote because this is one area where tax dollars will be coming in and *helping all of our constituents.*

83rd General Assembly of the State of Illinois, Transcription of Debate in the House of Representatives, June 13, 1984, p. E05 (emphasis added).

■ The United States could, of course, consent to the discriminatory taxation of amended ¶ 500.9a. However, in order for the United States to permit discriminatory taxation, it must state its consent explicitly. *County of Cook,* 725 F.2d at 1131. The consent found in 40 U.S.C. § 602a(d) lacks the specificity we would expect to find if Congress intended to subject the United States to discriminatory taxation. *Id.* at 1132. Thus, 40 U.S.C. § 602a(d) fails to provide the consent required for Cook County to impose the ad valorem property tax on the Centers.

■ Defendants assert that the amendment to ¶ 500.9a is not severable, so that the statute must fall in its entirety if the amendment is found discriminatory. The parties agree that Illinois law governs the question of severability.

The settled and governing test of severability is whether the valid and invalid provisions of the Act are so mutually connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into. effect the legislature would not pass the residue independently ... The provisions are not severable if they are essentially and inseparably connected in substance.

*People ex rel. Chicago Bar Ass'n v. State Bd. of Elections,* 136 Ill.2d 513, 146 Ill.Dec. 126, 135, 558 N.E.2d 89, 98 (1990) (quoting *Fiorito v. Jones,* 39 Ill.2d 531, 236 N.E.2d 698 (1968)). The entire act will be held unconstitutional if the General Assembly would not have passed the statute with the invalid portion eliminated. *Chicago Bar Ass'n,* 146 Ill.Dec. at 135, 558 N.E.2d at 98. The question is whether the remaining provisions are so inextricably bound up with the invalid provisions that they cannot be kept in force without doing violence to legislative intent. *Id.*

Unamended ¶ 500.9a became effective in 1969. The paragraph is one of numerous provisions that delineate the types of property that are exempt from taxation. *See* Ill.Rev.Stat. ch. 120, ¶¶ 500–500.23. Prior to the amendment of ¶ 500.9a, Cook County's assessment of property taxes was based on the consent to such taxes provided for in § 602a(d). Section 602a(d) became effective in 1972. Once the Seventh Circuit invalidated the assessment in *County of Cook,* the legislature responded by amending ¶ 500.9a in order to correspond to the federal waiver provided for in § 602a(d).

This brief history of ¶ 500.9a demonstrates that the provision remaining without the invalid amendment is not "so inextricably bound up" with the amendment that it "cannot be kept in force without doing violence to legislative intent." The Illinois legislature passed ¶ 500.9a in 1969 intending, according to.it plain language, to exempt all property acquired by a government body under an installment contract. *See County of Cook,* 725 F.2d at 1131 ("governmental body" as used in ¶ 500.9a encompasses federal governmental bodies). There was no federal consent provision in existence at that time since § 602a(d) did not become effective until 1972. Furthermore, Cook County did not assess taxes on the Centers until 1972. *Id.* at 1130. Apparently, it was the federal waiver in 1972, and not the intent of the legislature in 1969, that prompted the legislature to assess property taxes on the Centers as an exception to ¶ 500.9a. Thus, given the circumstance surrounding the passage of ¶ 500.9a in 1969, the court cannot conclude that "the legislature intended [the valid and invalid provisions] as a whole." Accordingly, the invalid amendment is severa-

ble from the remainder of ¶ 500.9a, allowing the latter to continue in effect.

In summary, the court finds that the assessment of ad valorem taxes on the Harold Washington Social Security Center and the Federal Archives and Records Center pursuant to amended ¶ 500.9a violates the Supremacy Clause of the U.S. Constitution. Illinois realty being acquired on an installment basis by the United States under the Purchase Contract Program and used by the federal government exclusively for its public purposes remains exempt from local ad valorem taxation. *See id.* at 1132.

### CONCLUSION

Accordingly, plaintiff's motion for summary judgment is GRANTED and defendants' motion for summary judgment is DENIED.